UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALTER WHITE, JR.,

      Plaintiff,                           CIVIL ACTION NO. 10-11397

      v.                                    DISTRICT JUDGE MARK A. GOLDSMITH

JAMES TRAYSER, R. CASSA,           MAGISTRATE JUDGE VIRGINIA M. MORGAN
F. POWELL, and SHERRY BURT,

      Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS
CASSA, POWELL AND BURT'S MOTION FOR SUMMARY JUDGMENT (D/E #12)**

**I. Introduction**

      This is a *pro se* 42 U.S.C. § 1983 action in which the plaintiff, an inmate in the custody of the Michigan Department of Corrections (MDOC), alleges that the defendants deprived plaintiff of his rights under the United States Constitution. The matter comes before the court on defendants Cassa, Powell and Burt's Motion for Summary Judgment (D/E #12). Plaintiff filed a response in opposition to that motion (D/E #19). For the reasons discussed below, this court recommends that defendants' motion for summary judgment (D/E #12) be **GRANTED** and that

defendants Cassa, Powell and Burt be granted summary judgment on all claims and the case against them be dismissed. The case should proceed solely against defendant Trayser.[1]

## II. Background

### A. Complaint

On April 8, 2010, plaintiff filed the complaint against defendants in this matter (D/E #1).[2] In that complaint, plaintiff alleges that, on August 16, 2009, he found a wrist watch in the yard at the Parnell Correctional Facility in Jackson, Michigan. (Complaint, ¶ 1) The next day, correctional officers searched plaintiff's cell and found the watch. (Complaint, ¶ 2) The watch belonged to defendant Cassa, a sergeant at the Parnell Correctional Facility. (Complaint, ¶ 2)

Plaintiff alleges that, on September 13, 2009, defendant Trasyer, a correctional officer at the Parnell Correctional Facility, assaulted plaintiff by slapping plaintiff on both shoulders and squeezing and pinching plaintiff. (Complaint, ¶ 5) Trasyer is also alleged to have threatened plaintiff on September 14, 2009 and called plaintiff a liar and thief on September 23, 2009. (Complaint, ¶¶ 6-7) Plaintiff further alleges that Trasyer improperly called him out of the chow line, yelled at plaintiff after plaintiff filed a grievance against Trasyer, and wrote a false misconduct ticket against plaintiff. (Complaint, ¶¶ 8-10) According to plaintiff, on November

---

[1] Defendant Trayser has filed a motion for summary judgment (D/E #22) and plaintiff has filed a response to that motion (D/E #24). However, those parties referenced an unattached exhibit in their briefs and this court has had to order the production of that exhibit (D/E #25).

[2] In his complaint, plaintiff appears to cite to purported exhibits to his complaint. However, no exhibits are attached. Given that neither defendants nor plaintiff refer to any of those exhibits in their motion or response, this court will address the pending motion solely on the record before the court.

-2-

28, 2009, Trasyer also placed a cup of coffee in front of plaintiff, while plaintiff was with several other prisoners, and said "Thank you for the information about who is bringing in the Tobacco [sic], we will talk again." (Complaint, ¶ 11) Plaintiff asserts that, by doing so, Trasyer intentionally endangered plaintiff's life. (Complaint, ¶ 11)

With respect to defendant Cassa, plaintiff alleges that, after Cassa's watch was found in plaintiff's cell, Cassa said to plaintiff: "So you like watches? Well we are going to get to know each other very well." (Complaint, ¶ 12) Plaintiff also alleges that Cassa was present, yet stood by and did nothing, while Trasyer harassed and threatened plaintiff, and when Trasyer endangered plaintiff's life. (Complaint, ¶ 12) Plaintiff further alleges that Cassa co-signed the false misconduct ticket. (Complaint, ¶ 12) According to plaintiff, Cassa was well aware of the grievances plaintiff filed against Trasyer. (Complaint, ¶ 12) Plaintiff also asserts that Cassa failed to fulfill his role as a supervisor and protect plaintiff from retaliation. (Complaint, ¶ 12)

With respect to defendant Powell, a captain at the Parnell Correctional Facility, plaintiff alleges that Powell reviewed the grievances plaintiff filed and did nothing to correct the situation. (Complaint, ¶ 13) Plaintiff also alleges that, after plaintiff filed a grievance against Trasyer for endangering plaintiff's life, Powell had plaintiff transferred to another correctional facility. (Complaint, ¶ 13)

With respect to defendant Burt, the warden at the Parnell Correctional Facility, plaintiff alleges that, on November 28, 2009, plaintiff sent Burt a letter asking for help. (Complaint, ¶ 14) Plaintiff also alleges that, while Burt is ultimately responsible for the training and supervision of the correctional facility's personnel, she did nothing. (Complaint, ¶ 14)

As relief, plaintiff seeks a declaratory judgment, an arrest and prosecution of Trasyer, compensatory damages, fees and costs, and all other appropriate relief. (Complaint, p. 10)[3]

**B. Pending Motion for Summary Judgment**

On July 16, 2010, defendants Cassa, Powell and Burt filed a motion for summary judgment (D/E #12). In that motion, those defendants argue they are entitled to summary judgment due to a lack of personal involvement in the alleged constitutional violations. Defendants also argue that plaintiff's claim of retaliation against Powell fails because plaintiff did not suffer an adverse action. Defendants further argue that the Prison Litigation Reform Act bars plaintiff's claim because he failed to establish an actual physical injury. Lastly, defendants argue that they are entitled to Eleventh Amendment and qualified immunities.

On August 10, 2010, plaintiff filed a response in opposition to defendants Cassa. Powell and Burt's motion for summary judgment (D/E #19). In that response, plaintiff argues that his claims of retaliation and deliberate indifference indicate physical assaults. Plaintiff also argues that, because the supervisory defendants knew about Trayser's actions and did nothing, they are also liable. In particular, plaintiff notes that Cassa co-signed the false misconduct ticket. Plaintiff further argues that Powell clearly retaliated against plaintiff as there is no other logical reason for the transfer and a correctional officer said Powell requested it. Additionally, plaintiff

---

[3]On April 16, 2010, plaintiff filed a Motion to Amend the Complaint (D/E #3), seeking to make a slight correction regarding the requested declaratory judgment. This court subsequently ordered that plaintiff's motion to amend be granted and that the amendment be deemed filed. (D/E #11)

asserts that defendants are not entitled to any immunity as they violated plaintiff's constitutional rights.

### III.  Standard of Review

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348.  The opposing party cannot merely rest upon the allegations contained in his pleadings.  Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

## IV. Discussion

### A. Claims Against Defendants in Their Official Capacities

As argued by defendants, the claims against them in their official capacities are barred by the Eleventh Amendment to the United States Constitution. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any foreign State.

[U.S. Const. amend. XI.] Courts have construed that language broadly and the Eleventh Amendment generally bars suits in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Skinner v. Govorchin, 463 F.3d 518, 524 (6th Cir. 2006).[4] "Whether a suit against State

---

[4] As discussed by the Sixth Circuit in Ernst v. Rising, 427 F.3d 351, 358-359 (6th Cir. 2005), a State's immunity comes with exceptions; the immunity does not attach if the lawsuit is not against the State or an arm of the State, the immunity does not extend to counties and similar municipal corporations, the immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law, the immunity may be abrogated by Congress when exercising its enforcement authority under the Fourteenth Amendment, and the immunity does not apply when the Federal Government brings the lawsuit. Additionally, a State may elect to waive that immunity through legislation through its conduct in litigation. Ernst, 427 F.3d at 358. None of these exceptions are apply in this case.

officials in their official capacity is deemed to be against the State depends on whether the plaintiff seeks 'retroactive' or 'prospective' relief'." Doe, 21 F.3d at 736. Retroactive relief compensates a plaintiff for a past violation of his legal rights and, while retroactive relief usually takes the form of money damages, that is not necessarily the case. See Cory v. White, 457 U.S. 85, 90 n. 2, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); Doe, 21 F.3d at 736-737. Where an official capacity claim is for retroactive relief, the action is deemed to be against the State whose officers are the nominal defendants. Doe, 21 F.3d at 737.

In this case, plaintiff seeks redress for a past violation of his legal rights and, therefore, the suit is deemed to be against Michigan itself. Doe, 21 F.3d at 737. The State of Michigan, however, has not consented to civil rights suits in federal court. See Johnson v. Dellatifa, 357 F.3d 539, 545 (6th Cir. 2004); Abick v. Michigan, 803 F.2d 874, 877 (6th Cir. 1986); see also Hill v. Michigan, 62 Fed. Appx. 114, 115 (6th Cir. 2003). Therefore, to the extent plaintiff's claims against officials are against them in their official capacities, the claims are barred by the Eleventh Amendment.

**B. Claims Against Defendants in Their Individual Capacities**

With respect to the claims against them in their individual capacities, defendants argue that they are entitled to qualified immunity. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200; 121 S.Ct. 2151; 150 L.Ed.2d 272 (2001) *overruled in part by* Pearson v. Callahan, 129 S.Ct. 808, 172 L.Ed.2d 565, (2009), (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). The privilege is an immunity from suit and not a mere defense to liability. Saucier, 533

U.S. at 200.  As a result, courts have "repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

"A court should not grant summary judgment on the issue of qualified immunity if there exists a genuine issue of material fact, 'involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.'" Flint ex rel. Flint v. Kentucky Dept. of Corrections, 270 F.3d 340, 346-347 (6th Cir. 2001) quoting Poe v. Haydon, 853 F.2d 418, 425-426 (6th Cir. 1988).  A court required to rule upon the qualified immunity issue must consider whether the facts alleged show the officer's conduct violated a constitutional right and whether that constitutional right was clearly established.  Saucier, 533 U.S. at 201. In making those inquiries, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 129 S.Ct. at 818.  "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." Saucier, 533 U.S. at 201.

Here, defendants only argue that they are entitled to qualified immunity and summary judgment because they were not personally involved in the alleged constitutional violations.  To succeed in under § 1983 , a plaintiff must show personal involvement by the defendant in the constitutional violation. Copeland v. Machulis, 57 F.3d 476, 481 (6th Cir. 1995) (per curiam).

A respondeat superior theory of liability, based on the right to control employees, is not cognizable under 42 U.S.C. § 1983. See Turner v. City of Taylor, 412 F.3d 629, 649 (6th Cir. 2005); Hays v. Jefferson County, Ky., 668 F.2d 869, 874 (6th Cir. 1982). "Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (citations omitted). Moreover, the Sixth Circuit held in Shehee that a denial of an administrative grievance and the failure to remedy the alleged constitutional violation did not constitute sufficient involvement to establish liability under 42 U.S.C. § 1983. Shehee, 199 F.3d at 300.

**1. Burt**

In this case, with respect to defendant Burt, plaintiff fails to provide any evidence suggesting that Burt was personally involved in any of the alleged constitutional violations and Burt is entitled to summary judgment. The only evidence pertaining to Burt is her affidavit, in which she asserts that her only involvement was to investigate allegations White made in a letter dated November 28, 2009. (Affidavit of Burt, ¶ 6; attached as Exhibit C to D/E #12) Plaintiff alleges that Burt's failure to properly respond to plaintiff's letter, as well as her failure to supervise her employees, constituted deliberate indifference. However, as discussed above, a respondeat superior theory of liability based on the denial of an administrative grievance or the failure to remedy the alleged constitutional violation is not cognizable under 42 U.S.C. § 1983,

and a plaintiff must show, at the minimum, that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers. Turner, 412 F.3d at 649; Shehee, 199 F.3d at 300. Plaintiff relies solely on such improper theories of liability in his claims against Burt and no genuine issue of material fact exists regarding whether she was personally involved in the alleged constitutional violations. Consequently, defendant Burt is entitled to judgment as a matter of law and should be granted summary judgment.

**2. Powell**

With respect to defendant Powell, plaintiff alleges that Powell violated his constitutional rights by failing to act in response to plaintiff's grievances and by transferring plaintiff to another facility as retaliation for filing those grievances. (Complaint, ¶ 13) In this court's view, Powell is entitled to summary judgment on both those claims.

Regarding plaintiff's first claim, Powell concedes in an affidavit that she received and responded to a grievance filed by plaintiff against Trayser. (Affidavit of Powell, ¶¶ 4-6) As discussed above, however, the denial of administrative grievances and the failure to remedy the alleged constitutional violation did not constitute sufficient involvement to establish liability under 42 U.S.C. § 1983. Shehee, 199 F.3d at 300. Therefore, Powell is entitled to summary judgment on that claim.

Regarding the claim of retaliatory transfer, Powell asserted in an affidavit that she was not involved in the transfer and that she does not even have the authority to transfer a prisoner. (Affidavit of Powell, ¶ 7) Similarly, the order transferring plaintiff was not issued by Powell and

her name does not appear on it. (Transfer Order; attached as Exhibit E to Plaintiff's Response) In his response, plaintiff claims that a correctional officer told him that Powell asked for and initiated the transfer, but there is no evidentiary support for that assertion. Therefore, as with plaintiff's failure to act claim against Powell, Powell is also entitled to summary judgment on plaintiff's claim of retaliatory transfer due to a lack of personal involvement.

Powell further argues that, even if she was personally involved in the transfer, plaintiff cannot establish the adverse action element of a retaliation claim. A prisoner makes out a First Amendment retaliation claim by showing: "(1) [he] engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) ... the adverse action was motivated at least in part by [his] protected conduct." Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir.1999) (en banc). However, a transfer from one prison to another prison does not rise to the level of an adverse action, because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights, unless it resulted in other foreseeable and negative consequences to the prisoner. See Siggers-El v. Barlow, 412 F.3d 693, 701-702 (6th Cir. 2005) (holding that a retaliatory transfer to another institution was an adverse action if it resulted in foreseeable, negative consequences to the prisoner, such as loss of his high-paying job and reduced ability to meet with his lawyer); Smith v. Yarrow, 78 Fed. Appx. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights." (internal quotation marks omitted)).

Here, plaintiff asserts that the transfer meant that he was unable to continue his speech therapy for a stroke he suffered. In support, plaintiff provides a Prison Health Services letter dated October 21, 2009 and authorizing a speech therapy consult. As part of that form, the consulting physician stated that plaintiff needed two follow up visits a week for the next four weeks. (Prison Health Services Form; attached as part of Exhibit D to Plaintiff's Response) However, the relevant transfer order for plaintiff was issued on December 7, 2009 (Transfer Order; attached as Exhibit E to Plaintiff's Response) and, based on the record before the court, plaintiff's speech therapy treatment should have been completed by the time he was transferred. Moreover, there is absolutely no evidence that plaintiff could not receive speech therapy while incarcerated at his new facility. Consequently, even if Powell was personally involved in the transfer, she would still be entitled to summary judgment on plaintiff's retaliation claim against Powell because no genuine issue of material fact exists with respect to the adverse action element of that claim.

### 3. Cassa

While defendant Cassa also argues that he is entitled to summary judgment due to a lack of personal involvement, plaintiff does appear to allege that Cassa was personally involved in the alleged constitutional violations. For example, plaintiff alleges that Cassa was present and acquiesced in Trayser's misconduct on numerous occasions. (Complaint, ¶ 12) Plaintiff also alleges that Cassa co-signed a false misconduct ticket on November 28, 2009. (Complaint, ¶ 12)

In an affidavit, Cassa denies ever observing any inappropriate behavior between Trayser and plaintiff, and he states that he had no knowledge of any grievances filed by plaintiff against

Trayser. (Affidavit of Cassa, ¶ 6; attached as Exhibit A to Defendants' Motion) Cassa also states in his affidavit that he does not recall ever writing a misconduct ticket against plaintiff and, as displayed in the attachment to his affidavit, plaintiff was not issued a misconduct ticket by anyone on November 28, 2009. (Affidavit of Cassa, ¶ 5 and Attachment; attached as Exhibit A to Defendants' Motion)

As part of his response, plaintiff submitted the relevant misconduct ticket. (Misconduct Ticket; attached as Exhibit C to Plaintiff's Response) The misconduct ticket was issued by Trayser on October 18, 2009 regarding October 17, 2009 events. Defendants correctly note that, in his complaint, plaintiff alleges that Cassa co-signed a November 28, 2009 ticket, but that is clearly a mistake by plaintiff as plaintiff also refers to the misconduct ticket earlier in his complaint and he expressly notes that the ticket was made over events that occurred on October 17, 2009. (Complaint, ¶ 12) However, while Cassa is listed as a witness by Trayser on the form, Cassa did not co-sign the misconduct ticket. (Misconduct Ticket; attached as Exhibit C to Plaintiff's Response)

Given the record before the court, Cassa is entitled to summary judgment because no genuine issue exists as to his personal involvement in the alleged constitutional violations. While plaintiff broadly claims that Cassa was present and acquiesced in Trayer's alleged actions, Cassa, in an affidavit, denied seeing anything and there is simply no evidence that Cassa was personally involved in any of Trayser's alleged actions. Moreover, the one action plaintiff alleges that Cassa took, co-signing a false misconduct report, is not supported by the evidence. While Trayser did list Cassa as a witness to misconduct plaintiff allegedly committed, there is no

evidence that Cassa had any part in issuing that ticket. Accordingly, Cassa should also be granted summary judgment.

### C. PLRA's Limitation on Damages

Defendants also argue that, because plaintiff fails to establish an actual physical injury, his claims are barred by 42 U.S.C. § 1997e(e). 42 U.S.C. § 1997e(e) provides:

> No federal action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

Moreover, the Sixth Circuit repeatedly has held in unpublished decisions, that Eighth Amendment claims for monetary relief based on mental or emotional injury are precluded by § 1997e(e) absent a showing of physical injury. See, *e.g.*, Merchant v. Hawk-Sawyer, No. 01-6244, 2002 WL 927026, *2 (6th Cir. May 7, 2002); Garrison v. Walters, No. 00-1662, 2001 WL 1006271, *2 (6th Cir. Aug.24, 2001); Robinson v. Corrections Corp. of America, No. 99-5741, 2001 WL 857204, *1 (6th Cir. June 20, 2001). The Second, Fifth and Tenth Circuits also have found that § 1997e(e) applies to constitutional claims. See Thompson v. Carter, 284 F.3d 411 (2d Cir. 2002) ("Because the words 'federal civil action' are not qualified, they include federal civil actions brought to vindicate constitutional rights."); Searles v. Van Bebber, 251 F.3d 869 (10th Cir. 2001) (applying § 1997e(e) to constitutional claims, including First Amendment religion claims); Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001).

Section 1997e(e) does not, however, prevent recovery of compensatory damages for other injuries, punitive damages, and injunctive relief. See Miller v. Bock, 55 Fed. Appx. 310,

2003 WL 202173 (6th Cir. Jan 28, 2003); Williams v. Ollis, Nos. 99-2168, 99-2234, 2000 WL 1434459, *2 (6th Cir. Sept.18, 2000).  Additionally, other federal courts have rejected the physical injury requirement of § 1997e(e) when the underlying claim is for a violation of the First Amendment or other right not typically involving physical injury.  As the Ninth Circuit held in Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998), "[t]he deprivation of First Amendment rights entitles a plaintiff judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred."  143 F.3d at 1213.  See also Rowe v. Shake, 196 F.3d 778, 781 (7th Cir. 1999) (no requirement of physical, mental or emotional injury for First Amendment claim because deprivation of First Amendment rights standing alone is a cognizable injury);

District Courts in the Eastern District of Michigan have generally taken the view that § 1997e(e) only limits recovery absent physical injury and does not bar the entire claim.  See, *e.g.*, Meade v. Plummer, 344 F.Supp.2d 569, 573 (E.D. Mich. 2004) (Lawson, J.).  In Meade, the court found that the "plain language of the statute does not require dismissal of constitutional claims in which no physical injury is present" and that the plaintiff could still "recover nominal, compensatory, and punitive damages, if appropriate, for all injuries except mental and emotional injuries."  Meade, 344 F.Supp.2d at 573-574 (citations omitted).  See also Zygaj v. Granholm, No. 07-14288, 2008 WL 2074388, *2 (E.D. Mich. May 14, 2008) (Battani, J.) (stating that the "majority of federal circuits agree that § 1997e(e) only bars claims for mental and emotional injury, not damages that do not involve mental or emotional injury" and adopting that majority view); Shabazz v. Martin, No. 00-73005, 2006 WL 305673, *6 (E.D. Mich. February 9, 2006)

(Hood, J.) (holding that the plaintiff in that case was not precluded from recovery of monetary damages pursuant to § 1997e(e) merely because he failed to demonstrate that he has suffered a physical injury). However, in Siggers-El v. Barlow, 433 F.Supp.2d 811 (E.D. Mich. 2006) (Tarnow, J.), the court held that § 1997e(e) is not applicable to a First Amendment claim. After reviewing authority from other districts, Judge Tarnow stated in that case:

> The Court agrees with the foregoing authorities that § 1997e(e) is unconstitutional to the extent that it precludes First Amendment claims such as the one presented in this case. The Court holds that the jury was entitled to find that Plaintiff suffered mental or emotional damages as a result of Defendant's violation of his First Amendment rights. Any other interpretation of § 1997e(e) would be inconsistent with the law and also unconstitutional.

[Siggers-El, 433 F.Supp.2d 811at 816.]

Here, given the lack of personal involvement in the alleged constitutional violations by Cassa, Powell and Burt, the court should grant summary judgment on that basis and it need not decide how § 1997e(e) limits or bars plaintiff's claim for damages in this case. To the extent this court will address the issue, it would note that plaintiff seeks more than just emotional and mental damages, and that his entire claim would not be barred by the PLRA. This court would also note that it finds the reasoning of Judge Tarnow in Siggers-El persuasive and that it would recommend that the district court reject the physical injury requirement of § 1997e(e) when the underlying claim is for a violation of the First Amendment or other right not typically involving physical injury.

**V. Conclusion**

For the reasons discussed above, the court recommends that defendants' motion for summary judgment (D/E #12) be **GRANTED** and that defendants Cassa, Powell and Burt be granted summary judgment on all the claims against them.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

        S/Virginia M. Morgan
        Virginia M. Morgan
        United States Magistrate Judge

Dated: December 23, 2010

## **PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and Walter White via the Court's ECF System and/or U. S. Mail on December 23, 2010.

                                                  s/Jane Johnson
                                                  Case Manager to
                                                  Magistrate Judge Virginia M. Morgan